1  T.C. Johnston, LL.M. - SBN 188006
   I n t e r n e t  L a w
2  3245 University Ave., Suite 1245
   San Diego, California  92104
3  619.446-6750 | info@tcjohnston.com

4  Attorney for Plaintiff Loyalmobs Incorporated, dba MondoFlyers

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOYALMOBS INCORPORATED, a California Corporation dba MondoFlyers,<br><br>Plaintiff,<br><br>vs.<br><br>ZYF MARKETING, LLC, a Washington Limited Liability Company, dba ZipYourFlyer.com; CAITLIN THORNBURG; KRISTEN THORNBURG,<br><br>Defendants. | Case No.:  **8:22-cv-1136**<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff alleges:

## JURISDICTION AND VENUE

1. Jurisdiction is proper under 28 U.S.C. §§ 1331, 1367, 1368.

2. Venue is proper under 28 U.S.C. § 1391.

3. Plaintiff is informed and believes that one or more defendants was conducting business in the State of California, to an extent that they are subject to jurisdiction in this forum.

4. A substantial part of the damages as alleged occurred in the County of Orange, State of California.

5. Each defendant named above is a natural person except ZYF MARKETING, LLC, which is a Limited Liability Company organized under the laws of the State of Washington and doing business there and elsewhere, including the State of California.

6. Plaintiff is informed and believes that CAITLIN THORNBURG is a member, manager and/or principal of ZYF MARKETING, LLC.

7. Plaintiff is informed and believes that KRISTEN THORNBURG is a member, manager, Governor, and/or principal of ZYF MARKETING, LLC; and is the copyright registrant of US Copyright No. TX0008239494, April 2, 2015, for its Zip Your Flyer website.

8. Plaintiff is informed and believes and thereon alleges that at all times relevant the defendants CAITLIN THORNBURG, KRISTEN THORNBURG, and ZYF MARKETING, LLC were each acting as agents of the other.

9. Plaintiff is informed and believes that CAITLIN THORNBURG, KRISTEN THORNBURG, and ZYF MARKETING, LLC, are doing business at the website zipyourflyer.com.

\* \* \*

**STATEMENT OF FACTS SUPPORTING ALLEGATIONS**

**AND CLAIMS FOR RELIEF**

10. Paragraphs 1 through 9 of plaintiff's General Allegations are incorporated and adopted by reference as though fully restated herein.

11. Both plaintiff and defendants are generally in the business of producing flyers and other marketing materials for the real estate industry.

12. Defendants and each of them (collectively "ZYF") present themselves to the public as the industry leader and the "#1 Most Trusted Agent Email Flyer Source Since 2015." Defendants do business at zipyourflyer.com.

13. Plaintiff LOYALMOBS is a competitor, offering similar products to the same real estate industry as defendant ZYF. Plaintiff does business at mondoflyers.com.

**PAST DISPUTE**

14. On or about March 28, 2018, defendants ZYF took the first of several actions against plaintiff LOYALMOBS via a Cease and Desist letter that claimed in short that plaintiff's use of ZYF's name in product comparisons on its website was trademark infringement. Defendants wrongfully alleged that plaintiff made false statements in its product comparisons, which defendants claimed constituted slander and defamation; and demanded that all references to defendant ZYF, including third-party testimonials that named the defendants, be removed.

15. Plaintiff made some minor changes to its website in response to the letter, and sent a lengthy rebuttal letter outlining why its comparisons were not false, as plaintiff's comparisons were based on the representations in, and the contents of, defendants' own website.

16. Defendants did not respond or act further, and the issues appeared resolved at that point.

17. However, in September, 2019, defendants ZYF sent a Takedown Notice regarding plaintiff's website to Amazon Web Services (AWS) entitled: CLAIM OF COPYRIGHT INFRINGEMENT, which was forwarded to Heroku, the hosting company for plaintiff's mondoflyers.com website, via Heroku's Digital Millennium Copyright Act (DMCA) email address.

18. Defendants' 2019 notice contained no copyright infringement claim at all, despite claiming to be specifically about copyright infringement.

19. Instead, defendants' CLAIM OF COPYRIGHT INFRINGEMENT notice was about trademark, alleging that plaintiff was using ZYF's trademark "zip your flyer" in its metadata and elsewhere, including claiming: "My company, Zipyourflyer.com, is a

highly ranked website on Google, and MondoFlyers is using our name in its metadata to enhance their search results."

20. Google does not use metadata in to determine search rankings and publicly revealed that fact at least a decade before defendants' claim otherwise.

21. The DMCA does not reach trademark law and is specific to copyright law.

22. Plaintiff's web-host Heroku gave plaintiff 24 hours to remove the allegedly infringing materials under threat of disabling plaintiff's mondoflyers.com website.

23. Plaintiff responded to the host and disputed any trademark infringement, but had no choice to but to edit its website to avoid being taken offline and effectively put out of business.

**CURRENT DISPUTE**

24. In early April of 2022, defendants sent out another salvo of DMCA takedown notices, this time sending several to plaintiff's website host Heroku, as well several to to Google, to have plaintiff's website de-listed from its search engine.

25. Defendants' DMCA notices to the host this time claimed that infringement was "found across the mondoflyers.com URLS noted below" but lacked many specifics.

26. Defendants' DMCA notices claimed that plaintiff utilized defendants' pages as templates, including utilizing language such as "Managing Broker/Owner" and "Administrative Contact" which are otherwise unprotectable terms.

27. Defendants' DMCA notices claimed that plaintiff referenced defendants' "copywritten *[sic]* name zipyourflyer over 50 times," in an apparent attempt to end-run the issue that "zipyourflyer" is a trademark issue and the short phrase is not subject to copyright.

28. Defendants' DMCA notices generally claimed that plaintiff utilized defendants' site as a template, but only cited examples of common website designs, including top logos, large slider images, drop-down menus, enrollment buttons, and

even having online enrollment forms at all, specifically stating: "The entire design of the site of the top logo, start an order in header, large main homepage slider with HTML text and interactive button on the slider, below main homepage slider there is a step by step process showing the 4 steps of the product, followed by testimonials."

29. All of the defendants' cited design issues are common to websites and are not individually subject to copyright.

30. Defendants' DMCA notices further claim that "design, functionality, user interface and layout" were copied by plaintiff, which includes unprotectable elements such as functionality, and design issues that are common to website design and not specific to defendants' website.

31. Plaintiff is informed and believes that defendants object to plaintiff's use of a side-by-side comparison of plaintiff's flyers with defendants' flyers for product comparison purposes, which plaintiff contends is fair use under copyright law, and trademark law to the extent that defendants' "ZipYourFlyer" mark is referenced. Defendants reference their objection in one of their notices to Google, stating plaintiff is "using our flyer sample on main slider image #1, below the black flyer they even say its taken from zipyourflyer.com which is a violation of our copyright."

32. Plaintiff is informed and believes that, had plaintiff filed a counter-notice per the DMCA, its web host company would have removed plaintiff's entire mondoflyers.com website pending resolution, which would have effectively put plaintiff out of business for up to several weeks. Specifically, the host Heroku's notice to plaintiff of the DMCA complaint states: "Please understand that if you submit a counter-notice, the content must still come down and remain down during the counter-notice timeframe."

33. As a result of defendants' DMCA notices, plaintiff LOYALMOBS thus invested significant time and resources to alter the website and draft lengthy responses to its website host outlining the changes.

34. Plaintiff intends to launch an updated website that incorporates or reincorporates content and elements it removed under threat of the DMCA notice, as well as add new content to the website for product-comparison purposes, all of which are noninfringing references to defendants and other competitors and their products.

**RELIEF REQUESTED**

35. An actual controversy has arisen and now exists between the parties relating to plaintiff's website design, categories, layout, and content in general, as well as plaintiff's product-comparison content which of necessity references defendants' products and name, for which plaintiff desires a declaration of rights.

36. A declaratory judgment is necessary in that plaintiff contends and defendants deny the following:

A. That plaintiff's use of common website designs and layout schemes, such as a top logo, a slider image, pull-down menus, and enrollment mechanisms, does not infringe copyrights of defendants; and are not protected by defendants' copyright, or subject to copyright protection.

B. That plaintiff's use of common, functional, or strictly descriptive terminology and categories such as "Administrative Contact" and "Managing Broker/Owner" does not infringe copyrights or trademarks of defendants; and are not protectable elements in copyright or trademark.

C. That plaintiff's use of a portion of one of defendants' many flyers, for direct comparison with plaintiff's flyers regarding type-face, readability, and functionality issues does not infringe copyrights of defendants, and constitutes fair use under copyright and trademark law.

D. That plaintiff's uses of defendants' business names "Zip Your Flyer," "ZipYourFlyer," or zipyourflyer.com, etc. do not infringe copyrights or trademarks of defendants, as short phrases are not protected by copyright, and the uses constitute nominative use under trademark law as they are specifically utilized only in comparing the two parties' products and offerings.

**PRAYER**

WHEREFORE, plaintiff prays for a declaratory judgment against defendants as follows:

1. That the Court declare the respective rights and duties of plaintiff and defendants as to the issues set for the above, and other issues raised as litigation progresses;

2. That plaintiff be awarded its costs, expenses and attorney fees pursuant to 17 USC §505 and all other applicable provisions of law; and

3. For such other and further relief as the Court deems just and proper.


Dated:  June 8, 2022                    *//T.C. Johnston//*
                                        T.C. Johnston, Attorney for Plaintiff
                                        Loyalmobs Incorporated, dba MondoFlyers